**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

---

Paula M. Overby,

        Plaintiff,

v.

Steve Simon, *in his official capacity as Minnesota Secretary of State*, and Timothy Walz, *in his official capacity as Governor of Minnesota*,

        Defendants.

Civil No. 0:20-cv-02250-WMW-TNL

**PROPOSED INTERVENORS-DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

---

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 4

BACKGROUND ................................................................................................. 4

LEGAL STANDARD ......................................................................................... 7

ARGUMENT ...................................................................................................... 7

   I.   The Minnesota Statute is preempted. ..................................................... 7

   II.   Plaintiff is not harmed by the general election occurring, as scheduled, on November 3, and, the harms she alleges are caused by the Minnesota Statute. .... 11

   III.   The balance of equities tips sharply in favor of holding the general election on November 3 ................................................................................................ 14

   IV.   The public interest does not support Plaintiff's requested relief. ....................... 15

CONCLUSION ................................................................................................. 16

## TABLE OF AUTHORITIES

<span style="font-variant:small-caps">Cases</span>

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983) ................................................................................ 11

*Arizona v. Inter Tribal Council of Ariz.*,
   570 U.S. 1 (2013) .................................................................................... 11

*Burdick v. Takushi*,
   504 U.S. 428 (1992) ................................................................................ 12

*Citizens for Legislative Choice v. Miller*,
   993 F. Supp. 1041 (E.D. Mich.), *aff'd*, 144 F.3d 916 (6th Cir. 1998) ........................ 12

*Craig v. Simon*,
   No. 20-3126, 2020 WL 6253445 (8th Cir. Oct. 23, 2020) .............................. 5, 6, 7, 10

*Craig v. Simon*,
   No. 20-CV-2066, 2020 WL 5988497 (D. Minn. Oct. 9, 2020) ........................... passim

*Foster v. Love*,
   522 U.S. 67 (1997) ................................................................................ 8, 11

*Hunter v. Hamilton Cnty. Bd. of Elections*,
   635 F.3d 219 (6th Cir. 2011) .................................................................... 15

*Jones v. Jegley*,
   947 F.3d 1100 (8th Cir. 2020) .................................................................... 7

*Kistner v. Craig*,
   No. U.S. 20A73 (Oct. 27, 2020) ............................................................... 6, 8

*League of Women Voters of N. Carolina*, 769 F.3d 224, 248 (4th Cir. 2014) ................. 15

*Mainstream Fashions Franchising, Inc. v. All These Things*,
   453 F. Supp. 3d 1167 (D. Minn. 2020) ...................................................... 14

*McMillan v. N.Y. State Bd. of Elections*,
   No. 10-CV-2502 (JG)(VVP), 2010 WL 4065434 (E.D.N.Y. Oct. 15,
   2010), *aff'd*, 449 F. App'x 79 (2d Cir. 2011) ............................................. 12

*Oglala Sioux Tribe v. C & W Enters., Inc.*,
   542 F.3d 224 (8th Cir. 2008) .................................................................... 11

*Pavek v. Simon*,
   No. 19-CV-3000, 2020 WL 3183249 (D. Minn. June 15, 2020) ....................... 14

*Public Citizen, Inc. v. Miller*,
   813 F. Supp. 821 (N.D. Ga. 1993), *aff'd*, 992 F.2d 1548 (11th Cir. 1993) .................. 9

*Rodgers v. Bryant*,
   942 F.3d 451 (8th Cir. 2019) ................................................................ 15

*Roudachevski v. All-Am. Care Centers, Inc.*,
   648 F.3d 701 (8th Cir. 2011) ................................................................ 7

*Snowden v. Hughes*,
   321 U.S. 1 (1944) ................................................................................ 12

*Stiles v. Blunt*,
   912 F.2d 260 (8th Cir. 1990) ............................................................. 12

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ........................................................................... 14

STATUTES

2 U.S.C. § 7 ............................................................................... 4, 5, 8, 11

2 U.S.C. § 8 ..................................................................................... 5, 9

Minn. Stat. § 204B.09 ......................................................................... 13

Minn. Stat. §204B.13 ................................................................... passim

OTHER AUTHORITIES

Press Release, Office of the Minnesota Secretary of State (Oct. 9, 2020),
   available at https://www.sos.state.mn.us/about-the-office/news-
   room/secretary-simon-statement-on-ruling-in-second-congressional-
   district-case/ ................................................................................... 10

Press Release, Office of the Minnesota Secretary of State (Sept. 24, 2020),
   available at https://www.sos.state.mn.us/about-the-office/news-
   room/secretary-simon-releases-statement-on-death-of-cd2-candidate/ ...................... 10

## INTRODUCTION

Angela Craig and Jenny Winslow Davies (together, "Intervenors" or "Proposed Intervenors-Defendants") oppose Plaintiff Paula Overby's motion for a preliminary injunction seeking to enforce the provisions of Minnesota Statute §204B.13 (the "Minnesota Statute"). In a separate suit filed by Intervenors on September 28, this Court enjoined the operation of the Minnesota Statute, determining that Intervenors were likely to succeed on their claim that federal law, 2 U.S.C. § 7, preempted the Minnesota Statute. Plaintiff's lawsuit and motion for expedited relief, filed mere days before the election, are nothing more than an attempt to have this Court revisit its October 9, 2020 injunction. But this Court has already determined that Plaintiff's claims are without merit. And, since the entry of the injunction, this Court declined to stay the injunction pending appeal, and two additional courts—the Eighth Circuit Court of Appeals and the United States Supreme Court—have also declined to stay the injunction. Plaintiff, or the political party she claims to represent, could have sought to intervene in that litigation. But they did not.

Plaintiff's claims are without merit and the request for a preliminary injunction should be denied.

## BACKGROUND

Angela Craig is the U.S. Representative for Minnesota's 2nd Congressional District. She is running for re-election and is the candidate for the Democratic-Farmer-Labor Party. Ms. Davies is a registered voter in the 2nd Congressional District. She has voted for a candidate in the 2nd Congressional District in the November general election. Ms. Davies wants that vote to count and for her district to be represented in the U.S. House of

Representatives in January 2021, when members are sworn in. *Craig v. Simon*, No. 20-CV-2066 (WMW/TNL), 2020 WL 5988497, at *1, 7–8 (D. Minn. Oct. 9, 2020).

On September 21, 2020, the Legal Marijuana Now Party ("LMNP") candidate for the 2nd Congressional District, Adam Weeks, unexpectedly passed away. The Secretary announced on September 24 that under the Minnesota Statute, the November election for the House seat in the 2nd Congressional District would be postponed until February 2021. Intervenors filed suit shortly thereafter and sought a preliminary injunction prohibiting the Secretary from enforcing the Minnesota Statute, on the grounds that doing so would violate federal law establishing a uniform time for federal elections. *See* 2 U.S.C. §§ 7, 8. Tyler Kistner, the Republican candidate running to represent the 2nd Congressional District, sought and was granted leave to intervene in that case to defend the application of the Statute. *See Craig*, 2020 WL 5988497, at *4. On October 9, this Court issued a 24-page order, in which it carefully considered the arguments raised by each of the parties and concluded that an injunction was warranted. *Id.* at *4–10.

After entry of the injunction, Kistner alone filed a notice of appeal and sought a stay of the injunction pending appeal. *Craig v. Simon*, Case No. 0:20-CV-2066 (D. Minn.), Dkt. 50, 51. After the District Court denied that motion, *id.* Dkt. 57, Kistner sought a stay in the Eighth Circuit. *Craig v. Simon*, No. 20-3126, 2020 WL 6253445 (8th Cir. Oct. 23, 2020) ("*Craig II*"). On appeal, the Secretary filed an opposition to Kistner's stay motion on the grounds that, if Kistner's motion to stay were granted, "it threatens to wreak havoc on the administration of Minnesota's 2020 general election." Secretary's Opp. to 8th Cir. Mot. Stay at 2.

5

In a detailed order issued on October 23, the Eighth Circuit panel unanimously denied Kistner's motion for a stay. *See Craig II*, 2020 WL 6253445. The panel determined that Kistner was not likely to succeed on the merits of his appeal because, "as applied to the current situation," it was unlikely that the Minnesota Statute could "coexist with the federal election laws." *Id.* at *4 (citing *Gonzalez v. Arizona*, 677 F.3d 383, 398 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013)).

Later that day, Kistner filed an emergency application for stay with the United States Supreme Court. The application was docketed on October 26, and the following day, without calling for a response, the Supreme Court denied it. *See Kistner v. Craig*, appl. denied, No. 20A73 (Oct. 27, 2020).

On October 26, at Kistner's request, the Eighth Circuit set an expedited schedule for briefing on the merits of his appeal. That briefing is ongoing and will be complete on November 9, 2020.

Plaintiff Overby filed her Complaint in this action on October 29, naming the Secretary and Timothy Walz, Governor of Minnesota (together, "Defendants"), as Defendants. *See* Compl. Dkt. 1. According to an affidavit appended to her Complaint, Plaintiff is the candidate chosen by the LMNP in early October 2020 to represent the LMNP if a special election is held in February. *See* Dkt. 2. She seeks an order declaring that the Minnesota Statute is not preempted by federal law; enjoining Defendants from certifying the results of the election for the 2nd Congressional District seat in the November general election; requiring the Secretary to call for a special election as provided by the

Minnesota Statute; and requiring the Secretary to announce Plaintiff's candidacy for the LMNP. *See* Compl. at 11.[1] The Court has construed Plaintiff's pleadings to contain a motion for expedited preliminary injunctive relief. *See* Dkt. 5.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citation omitted). "When deciding whether to grant" a preliminary injunction, a district court must assess whether (1) the plaintiff is "likely to succeed on the merits," (2) the plaintiff is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tip[s] in [plaintiff's] favor," and (4) "an injunction [is] in the public interest." *Jones v. Jegley*, 947 F.3d 1100, 1104–05 (8th Cir. 2020) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Plaintiff fails to satisfy any of these factors.

## ARGUMENT

### I.     The Minnesota Statute is preempted.

In its October 9 Order, this Court concluded that Intervenors were likely to prevail on their claim that the Minnesota Statute is preempted by federal law. *Craig*, 2020 WL 5988497, at *7. On appeal, in declining to enter a stay, the Eighth Circuit concluded it was unlikely that the Minnesota Statute could "coexist with the federal election laws" in the circumstances of this case, thus leaving this Court's injunction undisturbed. *See Craig II*,

---

[1] Page numbers correspond to the ECF header page numbers in Plaintiff's "Complaint for Declaratory and Injunctive Relief" attached to her *pro se* Complaint.

2020 WL 6253445, at *4. And, the United States Supreme Court, without seeking a response from Intervenors, denied an emergency application for a stay. *See Kistner v. Craig*, appl. denied, No. 20A73 (Oct. 27, 2020).

Plaintiff now seeks an order declaring that the Minnesota Statute is not preempted by federal law and ordering the Secretary to enforce it. *See* Compl. at 11. In essence, she asks this Court to vacate the October 9 injunction. She fails, however, to advance any argument showing that this Court should reverse course.

First, Plaintiff attempts to draw a distinction between the "time" of the general election set forth in 2 U.S.C. § 7 and the "manner" of the general election prescribed in § 204B.13. *See id.* at 8–9 ¶ 9. But the Supreme Court rejected precisely this argument in *Foster v. Love*. *See* 522 U.S. 67, 72–73 (1997). In that case, Louisiana argued that its "open primary system concern[ed] only the 'manner' of electing federal officials, not the 'time' at which the elections w[ould] take place." *Id.* at 72. The Supreme Court rejected this "imaginative" "attempt to draw [a] time-manner line" as "merely wordplay," concluding that by providing for a general-election date different from the date mandated by federal law, the Louisiana law "addresse[d] timing quite as obviously as § 7 does." *Id.* at 72–73. Likewise, just as the Louisiana law obviously "allow[ed] for the election of a candidate" on a date different from the federal election day, *id.* at 73, the Minnesota Statute requires the election for the 2nd Congressional District seat to occur on a date different than the date prescribed by § 7. Accordingly, it affects the timing of the election for that race, is at odds with § 7, and is preempted.

Second, Plaintiff contends, without support, that the Minnesota Statute should have "higher priority" than federal elections laws. Compl. at 9 ¶ 9. But as this Court has already recognized, "regulations pertaining to federal elections that are 'made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative.'" *Craig*, 2020 WL 5988497, at *4 (quoting *Foster*, 522 U.S. at 69).

Third, this rule is not displaced merely because the Minnesota Statute purports to address "rare and unusual circumstances." Compl. at 9 ¶ 9. Congress has specified the circumstances in which a state law may prescribe a different date for a federal election than the date set by federal law, and as the Court (again) has already determined, a vacancy in nomination is not one of them. *See Craig*, 2020 WL 5988497, at *5–6; 2 U.S.C. § 8.

Plaintiff does not appear to argue otherwise. Instead, she argues that the COVID-19 pandemic is an "exigent circumstance" that has "created a great deal of confusion about voting and concerns about if an individual[']s vote will be counted." Compl. at 9 ¶ 11. But she has not requested that the Court order the Secretary to move the date of the general election *because of the pandemic*. Rather, she requests that the general election be moved due to a vacancy in nomination within the meaning of § 204B.13.[2] As this Court and the

---

[2] Plaintiff's reliance on *Public Citizen, Inc. v. Miller*, 813 F. Supp. 821 (N.D. Ga. 1993), *aff'd*, 992 F.2d 1548 (11th Cir. 1993), *see* Compl. at 9–10 ¶ 13, is unavailing because the Court has already considered the application of that case to the Minnesota Statute, concluding it "does not apply in this case," and recognizing that if anything, *Public Citizen* indicates that a state cannot do what Minnesota has done here: "*invent* a failure to elect or *create* an exigent circumstance by refusing to certify the vote totals for Minnesota's Second Congressional District." *Craig*, 2020 WL 5988497, at *6.

9

Eighth Circuit have already determined, Intervenors are likely to succeed on the merits of their claim that the Minnesota Statute is preempted by federal law and an appeal on this issue is unlikely to succeed. *See Craig*, 2020 WL 5988497, at *7; *Craig II*, 2020 WL 6253445 at *4–5.

Fourth, Plaintiff argues that Minnesota has a compelling interest in holding a special election, presumably to ameliorate voter confusion caused by the pandemic. *See* Compl. at 9 ¶ 10. As discussed, the Minnesota Statute—the only Minnesota law on which Plaintiff relies—purports to move the date of a federal election in the event of a vacancy in nomination, not a pandemic. The Secretary, moreover, has not sought to postpone the November election due to the pandemic; rather, he has consistently urged voters to vote in November.[3] To the extent Plaintiff alleges that voter confusion in Minnesota is so "extreme" that the election should be postponed, *see* Compl. at 9 ¶ 10, she cites no evidence in support of this assertion. To the contrary, the Court has already determined that voter confusion does *not* justify cancelling the November election. *See Craig*, 2020 WL 5988497, at *9. Indeed, the Court further recognized that the pandemic weighs in favor of *enjoining*, not enforcing, the Minnesota Statute because the statute would inflict a significant burden on voters of the 2nd Congressional District by forcing them to vote twice. *See id.* at *8.

---

[3] *See* Press Release, Office of the Minnesota Secretary of State (Sept. 24, 2020), available at https://www.sos.state.mn.us/about-the-office/news-room/secretary-simon-releases-statement-on-death-of-cd2-candidate/; Press Release, Office of the Minnesota Secretary of State (Oct. 9, 2020), available at https://www.sos.state.mn.us/about-the-office/news-room/secretary-simon-statement-on-ruling-in-second-congressional-district-case/.

Finally, it appears that Plaintiff challenges 2 U.S.C. § 7 itself. *See* Compl. at 10 ¶ 15 ("Applying a general rule as to the date of the election to restrict the manner of the election is without precedent."). But it is well settled that Congress may prescribe the date of federal elections pursuant to its Elections Clause powers, and conflicting state laws are necessarily preempted. *See Foster*, 522 U.S. at 69 (citing U.S. Const. art. I, § 4, cl. 1); *Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 14 (2013) ("[T]he power the Elections Clause confers [to Congress] is none other than the power to pre-empt.").

For these reasons, Plaintiff has failed to show a likelihood of success on the merits of her claim that the Minnesota Statute is not preempted by federal law and that the Court should lift its October 9 injunction. Accordingly, the Court should deny Plaintiff's request for preliminary injunctive relief. *See Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 233 (8th Cir. 2008) (concluding failure to show likelihood of success on the merits precludes injunctive relief).

## II.   Plaintiff is not harmed by the general election occurring, as scheduled, on November 3, and, the harms she alleges are caused by the Minnesota Statute.

The Complaint lacks allegations regarding irreparable harm, let alone irreparable harm flowing from the Court's injunction enjoining enforcement of the Minnesota Statute. Rather, the harms Plaintiff alleges flow *from* the Minnesota Statute.

Plaintiff claims she will be harmed because she will not appear on the ballot in the November election. Compl. at 7 ¶ 7. Candidates, however, do not have an absolute right to be placed on the ballot. *See Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983). The Supreme Court has long held that an individual has no property or liberty interest in an

elected office. *Snowden v. Hughes*, 321 U.S. 1, 7 (1944). The same is true with respect to appearing on a ballot. *See McMillan v. N.Y. State Bd. of Elections*, No. 10-CV-2502 (JG)(VVP), 2010 WL 4065434, at *8 (E.D.N.Y. Oct. 15, 2010), *aff'd*, 449 F. App'x 79 (2d Cir. 2011). Political candidates, moreover, do not have a *right* to be on the ballot if they fail to satisfy a state's reasonable requirements for ballot access. "[L]imiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable." *Burdick v. Takushi*, 504 U.S. 428, 440, n.10 (1992).

In this case, it is the Minnesota Statute that prevents Plaintiff from appearing on the ballot in the *November election*. The statute provides that "in the case of a vacancy in nomination for a partisan office that occurs after the 79th day before the general election, the general election ballot shall remain unchanged, . . . [n]ew affidavits of candidacy or nominating petitions may not be accepted, and there must not be a primary to fill the vacancy in nomination." *Id.* subd. 2(c). It is unclear why Plaintiff seeks to reinstate this provision for the November election. Indeed, she seems to recognize that § 204B.13 is the cause of her alleged injury. *See* Compl. at 7 ¶ 5 (suggesting her name could have appeared on the ballot as part of the "more orderly process" in place before § 204B.13 was enacted).

Plaintiff also asserts that LMNP voters will be harmed if they are unable to vote for her and instead must vote for Mr. Weeks. *See id.* at 7 ¶ 6. But voters do not have an "absolute right to support a specific candidate regardless of whether he or she has satisfied reasonable eligibility requirements." *Stiles v. Blunt*, 912 F.2d 260, 266 (8th Cir. 1990); *see also Citizens for Legislative Choice v. Miller*, 993 F. Supp. 1041, 1046 (E.D. Mich.), *aff'd*,

144 F.3d 916 (6th Cir. 1998) (finding voters do not have constitutionally "guaranteed []
right to vote for a specific candidate"). Further, the Court has already rejected the argument
"that because LMNP voters cannot vote for the candidate of their choice, LMNP voters
might suffer irreparable harm." *Craig*, 2020 WL 5988497, at *9 n.7. As the Court
recognized, "any irreparable harm LMNP voters might suffer is the result of the unexpected
death of their candidate, not the result of a state law that likely is preempted by federal
law." *Id*. Accordingly, the harm Plaintiff alleges will be suffered by LMNP voters is not a
harm caused by the enjoinment of the Minnesota Statute and thus provides no basis for
granting her request to enforce that statute.

Finally, Plaintiff argues that voters who wish to write-in her name on the general
election ballot will not have their votes counted pursuant to Minnesota Statute § 204B.09
subd. 3(a). Compl. at 7–8 ¶ 7. But she has not alleged that she is eligible to be a write-in
candidate under that provision, and she does not appear to be challenging that provision in
this litigation. Moreover, she has not explained how this supposed harm bears any relation
to § 204B.13 or its enjoinment in the November election. Plaintiff also does not allege that
she timely attempted to register as a write-in candidate under § 204B.09 and that her request
was denied.

In short, the law is clear that political candidates do not have a legally-protected
"right" to be on the ballot and voters do not have a legally-protected "right" to have their
preferred candidate on the ballot. Plaintiff has thus failed to allege a cognizable—let alone
irreparable—harm, or one that flows from the Court's injunction enjoining the enforcement

of the Minnesota Statute. Accordingly, she has not carried her burden to show she is irreparably injured in the absence of the preliminary injunctive relief she requests.[4]

### III.   The balance of equities tips sharply in favor of holding the general election on November 3.

The balance of harms tips decidedly against granting Plaintiff's requested injunctive relief. This part of the analysis "involves assessing the harm the movant would suffer absent an injunction, as well as the harm other interested parties would experience if the injunction issued." *Mainstream Fashions Franchising, Inc. v. All These Things*, 453 F. Supp. 3d 1167, 1203 (D. Minn. 2020) (quotations and citations omitted).

As discussed, Plaintiff fails to allege a single cognizable harm that she will suffer in the absence of injunctive relief. On the other side of the scales, the Court has already determined that if the Minnesota Statute is enforced, "*not a single vote* cast in the November general election for Minnesota's Second Congressional District will count." *Craig*, 2020 WL 5988497, at *9 (emphasis in original). It is difficult to imagine a more severe harm because "[h]ere in the United States, the right to vote *and to have one's vote count* is a fundamental right." *Id*. at *8 (citing *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966); *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 234 (6th

---

[4] For these same reasons, Plaintiff has failed to meet the heightened standard for showing that she has Article III standing to seek preliminary injunctive relief. *See Pavek v. Simon*, No. 19-CV-3000 (SRN/DTS), 2020 WL 3183249, at *9 (D. Minn. June 15, 2020) (concluding that at the preliminary-injunction stage, "the Eighth Circuit would require more from the Plaintiff[] than mere allegations of standing, but less than would be required in the face of a motion for summary judgment"); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (recognizing "it is well established that the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties").

Cir. 2011); *Akizaki v. Fong*, 461 P.2d 221, 223 (Haw. 1969)). Additionally, if the Minnesota Statute is enforced, the people of the 2nd Congressional District will be unrepresented in the U.S. House of Representatives for more than a month. *See id*.

Further, as the Court previously recognized, "the Supreme Court 'has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election.'" *Id*. at *10 (quoting *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020)). But now, mere days before the November election, Plaintiff asks the Court to lift its injunction, order that her name be placed on the general election ballot, and nullify the votes of tens of thousands of Minnesota voters who have cast ballots in the 2nd Congressional District race, only to ask them vote again in February during a pandemic.

The Court should reject this request. The balance of harms weighs strongly in favor of denying Plaintiff's motion.

## IV.   The public interest does not support Plaintiff's requested relief.

Finally, the public interest weighs strongly against reinstating the Minnesota Statute. "[I]t is always in the public interest to protect constitutional rights." *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019). The public interest is particularly served by issuing an injunction in a case where voting rights are at issue because "[t]he public has a 'strong interest in exercising the fundamental political right to vote.'" *League of Women Voters of N. Carolina*, 769 F.3d 224, 248 (4th Cir. 2014). "That interest is best served by favoring enfranchisement and ensuring that qualified voters' exercise of their right to vote is successful." *Hunter v. Hamilton Cty. Bd. Of Elections*, 635 F.3d 219, 244 (6th Cir. 2011);

*Husted*, 697 F.3d at 437 ("The public interest . . . favors permitting as many qualified voters to vote as possible.").

As the Court has already determined, "two public-interest consequences will undisputedly occur" if the Minnesota Statute is enforced. *Craig*, 2020 WL 5988497, at *9. "First, all votes cast for Minnesota's Second Congressional District in November will be discarded. Second, every constituent in Minnesota's Second Congressional District will have no representation in the United States House of Representatives for more than a month. Given the overwhelming importance for Minnesota's Second Congressional District voters to be able to vote in the November general election and to have uninterrupted representation in the United States Congress," *id*., the public interest tips sharply against granting Plaintiff's requested injunction.

## CONCLUSION

For the foregoing reasons, Intervenors respectfully request that this Court deny Plaintiff's motion for preliminary injunction.

Dated:  October 31, 2020                    **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

s/Charles N. Nauen
Charles N. Nauen (#121216)
David J. Zoll (#0330681)
Rachel A. Kitze Collins (#0396555)
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
(612) 339-6900
cnnauen@locklaw.com
djzoll@locklaw.com
rakitzecollins@locklaw.com

**PERKINS COIE LLP**

Marc E. Elias (*pro hac vice* pending)
Joel J. Ramirez (*pro hac vice* pending)
700 Thirteenth Street NW, Suite 800
Washington, DC 20005-3960
Telephone:  202.654.6200
Facsimile:  202.654.6211
MElias@perkinscoie.com
JoelRamirez@perkinscoie.com

Kevin J. Hamilton (*pro hac vice* pending)
Holly M. Simpkins (*pro hac vice* pending)
Laura C. Hill (*pro hac vice* pending)
Nitika Arora (*pro hac vice* pending)
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
(206) 359-8000
KHamilton@perkinscoie.com
HSimpkins@perkinscoie.com
LHill@perkinscoie.com
NArora@perkinscoie.com

*Attorneys for Proposed Intervenors-Defendants*